Rafael FERNANDEZ–ROQUE, et al., Petitioners,

v.

William French SMITH, et al., Respondents.

Moises GARCIA–MIR, et al., Plaintiffs,

v.

William French SMITH, et al., Defendants.

Orlando CHAO–ESTRADA, Petitioner,

v.

William French SMITH, et al., Respondents.

Civ. A. Nos. C81–1084A, C81–938A and C81–1350A.

United States District Court, N. D. Georgia, Atlanta Division.

Aug. 20, 1981.

Dale M. Schwartz, John A. Pickens, Myron N. Kramer, Deborah Ebel and Ken Hindman, Atlanta Ga., and Frank P. Samford, III, Decatur, Ga., for petitioners.

Robert J. Castellani, First Asst. U. S. Atty., and Douglas P. Roberto, Asst. U. S. Atty., Atlanta, Ga., for respondents.

POST–HEARING ORDER

SHOOB, District Judge.

In the case of *Soroa-Gonzales v. Civiletti,* 515 F.Supp. 1049 (1981), this Court concluded that the INS District Director's decision to revoke, and to refuse to reinstate, petitioner's parole was an abuse of discretion rendering petitioner's continued incarceration unlawful. At the *Soroa-Gonzales* exclusion hearing it was determined by an Immigration Law Judge that petitioner was excludable from the United States solely for lack of entry papers, and that the other charges against the petitioner had no basis. The government was unable to show this Court (1) that Mr. Soroa-Gonzales was likely to abscond; (2) that he was a threat to national security; or (3) that for some other reason, it was against the public interest to release him on parole. The Court "intimate[d] no opinion concerning the legality of detention of the remaining 1,700 Cuban refugees at the Atlanta Federal Penitentiary." 515 F.Supp. at 1052.

This Court must now inquire further into the legality of detention of those remaining at the Penitentiary. After consolidating two class actions and a single petitioner's action, *see* orders of this Court dated July 14, 1981 and July 24, 1981, this Court certified a class and 12 subclasses, *see* order of this Court dated August 7, 1981, 91 F.R.D. 117. Based on these subclasses, a series of hearings was scheduled at which the government was ordered to show cause why subclasses of the larger class [1] should not be released on terms prescribed by this Court.

At the hearing August 17, 1981, the government was given the opportunity to show cause why those detainees in subclasses 1 and 2 should not be released. Subclass 1 is comprised of those Cuban detainee class members who were charged by the INS on its form I–22 as being excludable from the United States solely for lack of entry papers, 8 U.S.C. § 1182(a)(20). Subclass 2 is comprised of those Cuban detainee class members, other than those in subclass 1, above, who have or will have had their exclusion hearings, and who have been found or will be found to be excludable solely on the basis of lack of entry papers (8 U.S.C. § 1182(a)(20)), after an exclusion hearing at which the Immigration Judge heard evidence on all grounds of exclusion the detainee was charged with. *See* order of this Court dated August 7, 1981, page 124.

Thus the Court began this series of hearings with those detainees (subclasses 1 and 2) charged with exclusion or found to be excludable *solely* on the basis of lack of

entry papers. The Court defined out of these subclasses those detainees whose files and background indicated that additional factual determinations might be required before a parole determination could be made. In directing the government to provide the Court and petitioners with the names in subclasses 1 and 2, the Court gave the government the opportunity, under the terms of the August 7, 1981 show cause order, to object to the release of any members of those two subclasses on the grounds that (1) the release would constitute a threat to national security, (2) it would likely result in the detainee's absconding, or (3) it would be against the public interest for reasons not readily apparent. In response to this Court's August 7, 1981 order, the government furnished the Court with a list of 258 detainees in subclasses 1 and 2. Of that group the government listed 77 detainees whose release it objected to and the reasons therefor as was required by the Court's order. The government did not object to release of the remaining 181 detainees on said list, but would not agree to their release, relying solely on its general opposition to their release. (By agreement of counsel, many of the 77 were reassigned to other subclasses; 16 were added to the list of 181 for a present total of 197 in this group, subclasses 1 and 2.)

INS official Mr. Russell Ahr testified on August 19, 1981 that he still had personal reservations as to the release of some of the 181 detainees not specifically objected to. This Court thereupon continued the hearing

---

1. The class is defined as—

> all Cuban nationals whose parole has been revoked by the INS, who are presently incarcerated at the Atlanta Federal Penitentiary or who will be incarcerated there, and who arrived in the United States from Cuba as part of the 'Freedom Flotilla' in 1980.

Order of this Court dated August 7, 1981, page 123.

In the government's Motion for Relief from the Court's Order of August 7, 1981, the government indicates that the "Court has adopted an inaccurate class certification," *id.* at page 5, in that most of the 1820–1830 Cuban detainees "were never paroled and consequent-

ly never had their parole 'revoked'." *Id.* at page 6. *But see, e. g., Soroa-Gonzales v. Civiletti*, 515 F.Supp. at 1052. The confusion is in large part attributable to "some misunderstanding or lack of communication," on the part of the INS, through which "notices of revocation [of parole] were placed in many or almost all of their files..." Declaration of Andrew J. Carmichael, Exhibit 4 to government's Motion for Relief from the Court's Order of August 7, 1981, at page 2, paragraph 10. Accordingly, this Court's certification of the main class will be amended by this order, in that the words "whose parole has been revoked by the INS," will be deleted.

over until Wednesday, August 19, to afford the government an opportunity to furnish the Court with the names of those detainees on the remaining list to whom it objected and the basis for that objection. At the August 19 hearing, the government did not offer the names or information requested by the Court, but instead continued to rely solely on its general grounds against release.

In a Report to the Court as to subclasses 3 and 4 due August 18, 1981 (*see* order of the Court, August 7, 1981, page 126, ¶ 6), the government took a similar position, in that it raised its general objections to release of the detainees on parole as a group on this Court's order, but failed to show the Court cause (within the parameters of the August 7, 1981 order) why any individual detainees should not be released. Subclass 3 contained only 3 detainees; subclass 4 contained 26 detainees. Thus, there is a total of 226 detainees in subclasses 1–4. Subclass 3 is comprised of those Cuban detainee class members who have been or will be determined by the Immigration Judge to be excludable on two or more grounds, but whose excludability determination was or will be affirmed by the Board of Immigration Appeals solely on the basis of lack of entry papers. Subclass 4 is made up of Cuban detainee class members who have had or will have exclusion hearings at which the Immigration Judge determined them to be excludable solely on the basis of lack of entry papers, but where the Immigration Judge did not hear all the evidence on other grounds for exclusion with which the detainee was charged.

In "Defendants' Status Report on the Progress of Implementing the Attorney General's 'Status Review Plan and Procedures'" filed with the Court on August 17, 1981, the government reported that 156 detainees have been recommended for release to the Commissioner of the Immigration and Naturalization Service. In light of this, the government was DIRECTED in open court to furnish a list of these 156 detainees to the Court and to counsel for plaintiffs. The government has now furnished this list. In addition, the government was ORDERED to SHOW CAUSE why this additional group of 156 detainees, recommended for release after 14–15 months of incarceration, should not be released immediately. On August 19, 1981, the government announced in open court that it no longer had any objections at all to the release of this group.

Accordingly, the government having withdrawn all objection whatsoever to the release of the 155 Cuban detainees[2] whose names appear on the attached stipulation of counsel, Attachment # 1 to this order, IT IS ORDERED that the writ of habeas corpus shall ISSUE to each of them under the terms that follow. Each detainee shall be released from prison as soon as he has been approved for sponsorship or resettlement by the United States Catholic Conference, or by any of the ten other agencies within the American Council of Volunteer Agencies, and in no case later than September 15, 1981.[3] Should it appear by September 5, 1981, that it will be impossible to resettle all 155 detainees by September 15, 1981, counsel for petitioners shall so inform the Court, so that other arrangements can be made or this order modified. Further, each detainee designated by the government as a material *witness* to a crime shall be required to report by telephone monthly to the appropriate person at the Atlanta branch of the Federal Bureau of Investigation. Finally, each detainee shall be required to report to the appropriate district Immigration and Naturalization Service Office as directed by the INS.

Since the government has agreed to release the 155 detainees as recommended by the United States Catholic Conference, fur-

---

**2.** One of the 156 detainees listed as recommended for release has already been released, bringing this group to 155.

**3.** *See also* Attachment # 2 to this order.

ther orders from this Court, listing the names of those detainees to be released each day, are unnecessary.

The main question before the Court is whether the government has shown sufficient cause for the continued incarceration of the detainees in subclasses 1, 2, 3 and 4 as to whom the government has raised no specific objections. Before reaching this question, however, the Court wishes to address several of the government's legal contentions prior to a decision on the merits.

■ First, the government agrees that the Court "has habeas corpus jurisdiction to review the legality of the aliens' detention." Defendants' Memorandum in Support of Request for Relief from Court Order of August 7, 1981, page 10.[4] The government contends, however, that the Court's power to decide this case, in which petitioners are challenging the Attorney General's decision not to free them on parole, is limited to ascertaining whether or not the Attorney General's discretionary authority was exercised at all. *Id.* at page 11.[5] The Court has previously rejected that contention, *Soroa-Gonzales, supra,* 515 F.Supp. at 1057, and rejects it now. "Whatever the standard in other circuits, the standard of review is clear in this circuit: the question is whether the Attorney General, acting through the INS District Director, abused his discretion," *id.* at 1057. *See also Ramirez v. Smith,* C80–1825A (N.D.Ga., June 30, 1981) (Freeman, J.), at page 4. While the rationale of the recent decision of the Tenth Circuit in *Rodriguez-Fernandez v. Wilkinson,* No. 81–1238, slip op., is quite different, this Court concludes that both the majority decision and the dissent in that case support this Court's conclusion.

This Court has carefully considered whether it ought to release the 226 Cuban detainees, whose names appear on the attached stipulation of counsel, *see* Attachment # 3 to this order, over the objection of the government. These people were invited into the United States by the President. Subclasses 1–4 do not contain any detainees who have committed crimes in the United States. Their excludability proceedings have been based substantially on their lack of entry papers, despite the fact that the government knew they had no entry papers when they were invited, and despite the fact that all 125,000 Freedom Flotilla Cubans lacked proper entry papers. None of the detainees in subclasses 1 through 4 is a threat to national security. The government has not even made a *showing* that any of the 226 detainees on the attached stipulation is likely to abscond, or that their release would be contrary to the public interest. The government declined to do so, resting only on their general objections, despite prompting from the Court and a continuance granted by the Court to enable the government to raise specific objections. Had the government made such a showing, the individuals would have been excluded from this list. It was the Court's intention in defining these classes to address first the group of detainees whose continued detention was apparently based solely on factors which were determined to be insufficient by this Court for continued incarceration in the *Soroa-Gonzales* case.

The Court is mindful of the distinction between exclusion and parole; no decision is made or intimated concerning the *excludability* of these 226 detainees. However, pending exclusion, the Court must determine whether their continued incarceration in a maximum security prison—after ap-

---

4. *See also Soroa-Gonzales, supra,* 515 F.Supp. at 1054–56, for additional bases of jurisdiction.

5. Earlier in the same brief, at page 7, n.4, the government, citing *Ahrens v. Rojas,* 292 F.2d 406 (5th Cir. 1961), stated that the decision "whether to parole an alien is committed exclusively to the Attorney General, and is not judicially reviewable." Aside from the fact that this contradicts the government's proposition in the text above, and that this contention was explicitly rejected by this Court in *Soroa-Gonzales, supra,* 515 F.Supp. at 1057, *Ahrens* simply cannot be read as supporting that proposition. Some of the dicta in *Ahrens* is ambiguous, but it is quite clear, 292 F.2d at 411, that the Fifth Circuit reviewed the Attorney General's parole decision for abuse.

proximately 15 months, a "reasonable period of negotiations for their return..." to Cuba having long since expired, *Rodriguez-Fernandez, supra*, at page 16—is an abuse of parole discretion. Of the parole power, the Supreme Court has said:

> The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted ... Physical detention of aliens is now the exception, not the rule, and is generally employed only as to security risks of those likely to abscond. See Annual Reports, Immigration and Naturalization Service, 1955, pp. 5–6; 1956, pp. 5–6. Certainly this policy reflects the humane qualities of an enlightened civilization.

*Leng May Ma v. Barber*, 357 U.S. 185, 190, 78 S.Ct. 1072, 1075, 2 L.Ed.2d 1246 (1958), cited in *Ahrens v. Rojas, supra*, 292 F.2d at 410–11.

■ This Court must conclude that continued detention of these Cuban refugees with no history of criminality after approximately 15 months no longer reflects "the humane qualities of an enlightened civilization" and that continued detention of persons (1) unlikely to be excluded back to Cuba any time in the near future; (2) unlikely to abscond; (3) not a threat to the national security; (4) not a threat to the public interest; (5) who have committed no crimes here; and (6) who were invited here by the President, is simply incarceration for an indefinite period as an alternative to departure and constitutes an abuse of discretion of the parole authority. See *Rodriguez-Fernandez v. Wilkinson, supra*. The government's objection, based on its own review plan, cannot prevail. Its plea for more time to re-exercise its discretion has a hollow ring after 15 months. Even had each of these 226 been convicted of a misdemeanor here, each could have served his term by now. The Court will accommodate the government's request for more time in many respects, *infra*, but not as to subclasses 1 through 4.

■ The government's objection that parole review, like parole decisions, must be conducted on a case-by-case basis, also fails. Subclasses 1 through 4 were defined to bring before the Court those detainees as to whom there appeared to be an abuse of the parole discretion. The Court gave the government several chances to show factors as to detainees which supported the INS' parole decision. The government failed to do so, and any blame then for imprecision of focus must fall on defendants. While the notion of classwide habeas relief is novel, it is no more novel than the situation facing the government and the Court. But the indefinite detention of persons not convicted of crime is not an acceptable alternative to exclusion. It is this Court's judgment that the carefully phased release of these 226 detainees into the care of the United States Catholic Conference and other responsible agencies is appropriate relief for these subclasses.

Accordingly, IT IS ORDERED that the writ of habeas corpus shall ISSUE to the 226 detainees in subclasses 1 through 4, Attachment # 3 to this order, as to whom the government raises no specific contention that they are a threat to national security or to the public interest, or that they are likely to abscond. These 226 detainees shall be released on parole under the same terms and conditions as apply to the 155 detainees ordered released with the consent of the government.

Also pending before the Court at this time are (1) defendants' motion for a stay of discovery; and (2) defendants' motion for relief from the Court's order of August 7, 1981. Petitioners, in light of events since the filing of the first motion, have consented to it. Accordingly, defendants' motion for a stay of discovery is GRANTED.

Defendants have also moved the Court for relief from the Court's order of August 7, 1981. The government indicated in open court that it would take approximately three weeks for INS officials to properly review the remaining files of the Cuban detainees and to prepare a proper response

to the Court's order of August 7, 1981 as to the remaining detainees. The government represents that it has more than doubled the manpower working on the case, and that the government now plans to complete its own review under its "Status Review Plan and Procedures" by the end of this year. This is in part due to the fact that the government has now established a second review panel, and is prepared to set up others. The Court's concern, of course, has always been that nothing was being done. The government has now demonstrated that it is in motion on this problem. Accordingly, defendants' motion for relief from the Court's order is GRANTED in the following respects. IT IS ORDERED that the information required to be filed by orders numbered (8), (10), (12), (14), (16) and (18), page 126 of this Court's August 7, 1981 order, be FILED by the government no later than 2:00 p m, Thursday, September 17, 1981. The hearings established in orders numbered (7), (9), (11), (13), (15) and (17) are CONSOLIDATED for a single hearing at 10:00 a m on Monday, September 21, 1981, at which time the Court will schedule a series of hearings, if advisable, depending on the nature and extent of the objections filed by the government to the release of the remaining detainees.

The releases ordered and the hearings scheduled are not meant to interfere with the government's announced plan and procedures to grant parole. This Court encourages the employment of *adequate* government resources to make these determinations in an expeditious fashion.[6] If the government can demonstrate to this Court prior to the scheduled September 21, 1981 hearing that sufficient personnel has been assigned to review the files and make parole determinations as to those remaining detainees, this Court will consider a request for a continuance of the September 21, 1981 hearing or a modification of this order to allow the government to do what it should have done long ago.

In conclusion, IT IS ORDERED:

(1) that the main class certified in this action be AMENDED by deletion of the words, "whose parole has been revoked by the INS;"

(2) that the writ of habeas corpus ISSUE to the detainee class members whose names appear on the attached stipulation of 155 detainees, see Attachment # 1, under the terms and conditions set forth at page 241 of this order and further, that this group be released prior to the group below, and beginning Friday, August 21, 1981;

(3) that the writ of habeas corpus ISSUE, under the terms and conditions at page 241 of this order, to those members of subclasses 1–4 whose names appear on the attached stipulation of 226 persons, see Attachment # 3, as to whom the government made no specific contention that the detainee is likely to abscond, that the detainee is a threat to national security, or that the release of the detainee would be contrary to the public interest;

(4) that the government's motion for a stay of discovery is GRANTED; and

(5) that the government's motion for relief of the Court's August 7, 1981 order is GRANTED as set forth at pages 243, 244 of this order.

---

6. The testimony indicated that prior to the August 17 hearing only four INS officers were working on these 1800 files on a part-time basis, and that no overtime had been authorized by the government. The Court understands that five additional personnel has now been assigned to this task.