Carlos **CONCEIRO**, Petitioner,

v.

Sol **MARKS**, Respondent.

No. 73 Civ. 697.

United States District Court,
S. D. New York.

June 25, 1973.

As Amended July 2, 1973.

Maurice A. Reichman, New York City, for petitioner.

Whitney North Seymour, Jr., U. S. Atty., for respondent; Stanley H. Wallenstein, Asst. U. S. Atty., of counsel.

WYATT, District Judge.

This is a petition for the writ of habeas corpus (28 U.S.C. § 2241) by Conceiro, an alien; Conceiro is a Cuban national.

Conceiro arrived from Rome at Kennedy Airport in New York City on December 17, 1972. He had no United States visa of any kind.

A special inquiry officer, after an inquiry proceeding which ended on December 28, 1972, made an order of exclusion on that date. 8 U.S.C. § 1226(a). It was an "oral decision" but a written transcript was made and signed. This order, as will later appear, has become final. 8 U.S.C. § 1226(c).

Judicial review of an order of exclusion is obtained by habeas corpus proceedings. 8 U.S.C. § 1105a(b).

Conceiro is plainly excludable as an immigrant who has no visa, immigrant visa or otherwise. 8 U.S.C. § 1182(a) .(20). This was conceded by him at the inquiry (SM 30) and is conceded by his counsel on this petition.

The claim here is that Conceiro should have been given parole status under 8 U.S.C. § 1182(d)(5) which reads as follows:

"The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

The Attorney General has delegated his "discretion" under this parole statute to the "district director [of the Immigration and Naturalization Service] in charge of a port of entry". 8 CFR § 212.5(a).

On December 28, 1972, the special inquiry officer made the order of exclu-

sion, to which reference has already been made.

### 1.

The inquiry had begun before the special inquiry officer on December 18, 1972.

During the inquiry and on December 26, 1972, counsel for Conceiro asked for parole as a "refugee" (SM 39). Counsel for the Immigration and Naturalization Service (INS) replied at once that "orally . . . political asylum is denied" (SM 39).

██ On December 27, 1972, the inquiry resumed and INS counsel then advised Conceiro and his counsel that INS was sending a letter which then was purportedly read. The letter as so read was a notice to Conceiro from the District Director that "political asylum was denied . . . on the ground that you have failed to establish that you cannot return to the countries whence you came i.e. Spain and Italy without fear of persecution." (SM 41). Presumably the denial of "political asylum" was a careless expression of denial of parole under 8 U.S.C. § 1182(d)(5). In fact, no letter of parole denial was ever received by Conceiro and evidently no such letter was ever mailed, since no retained copy has been produced; carelessness is again assumed.

Counsel for Conceiro filed a notice of appeal to the Board of Immigration Appeals. The notice is dated December 28, 1972; the reason for appeal is stated to be that, because of his mother's terminal illness in this country, Conceiro was entitled to a waiver of 8 U.S.C. § 1182(a)(26) by reason of "unforeseen emergency" within 8 U.S.C. § 1182(d)(4); it was further stated that whether Conceiro wanted "refugee status" was "irrelevant".

By letter dated December 27, 1972, counsel for Conceiro formally applied to the District Director for Conceiro "to remain in the United States on parole as a Cuban refugee". The date of the letter is the date on which it was dictated; it was delivered to the District Director's office on December 29, 1972 (all federal offices were closed on December 28 because of the funeral of President Truman).

The issue before the Board on appeal was considerably changed from that stated in the notice of appeal. It was conceded before the Board that Conceiro was ineligible for a waiver of visa and that he was inadmissible. Counsel for Conceiro urged that the Board review the refusal of the District Director to grant parole status and that the Board itself grant parole.

After oral argument the Board on February 12, 1973 filed a careful opinion and order dismissing the appeal on the ground that the Board had no power to grant parole because there had been no delegation to it of parole authority by the Attorney General.

This petition followed.

### 2.

██ It is urged that the Board failed to exercise a discretion to grant or deny parole status. If the Board has such discretion, its failure to exercise it would be reviewable in this habeas corpus proceeding. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954)

The issue here is whether the Board had any discretion with respect to parole.

I agree with the Board's careful opinion.

Parole was originally an administrative device, without any statutory authority. During this period, the Board decided in Matter of R, 3 I. & N. Dec. 45 (1947) that it had authority to parole.

In 1952, however, parole was authorized by statute and the authority to grant parole was vested in the Attorney General (8 U.S.C. § 1182(d)(5)) who, as already noted, has delegated his discretion to district directors. 8 CFR 212.-5(a). He has delegated no parole dis-

457

cretion to the Board which, as pointed out in its opinion in this matter, has "consistently taken the position that the parole power . . . is not within the scope of our authority".

This administrative construction of the regulation, 8 CFR 212.5(a), is entitled to great weight. Thorpe v. Housing Authority, etc., 393 U.S. 268, 276, 89 S. Ct. 518, 21 L.Ed.2d 474 (1969).

Conceiro argues from a general grant of powers to the Board in regulation 8 CFR 3.1(d)(1), namely, that the Board "shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case".

This general grant is without any significance here because no appeals from parole decisions in *exclusion* cases are authorized. Such appeals are not "cases before it [the Board]" within the meaning of the general grant. This situation is to be contrasted with the specific grant of appellate jurisdiction to the Board of "Determinations relating to bond, *parole*, or detention of an alien as provided in Part 242 of this chapter" [Proceedings to determine deportability of aliens *in* the United States", as distinguished from "exclusion of aliens" (part 236) and "deportation of excluded aliens" (part 237)]. 8 CFR 3.1(b)(7) (emphasis supplied). In other words, when the Attorney General wishes the Board to review the grant or denial of parole, as in deportation of aliens admitted and *in* the United States, he specifically grants appellate jurisdiction to the Board.

Moreover, the specific delegation of discretion to parole aliens into the United States is to the district directors and to no one else. 8 CFR 212.5(2). There is no delegation to the Board. The expression of one thing is the exclusion of another.

Conceiro relies on Wolf v. Boyd, 238 F.2d 249 (9th Cir. 1956), cert. denied, 353 U.S. 936, 77 S.Ct. 814, 1 L.Ed.2d 759 (1957), rehearing denied 353 U.S. 989, 77 S.Ct. 1282, 1 L.Ed.2d 1146 (1957). This decision does not deal in any way with parole, but rather with suspension of deportation under 8 U.S.C. § 1254 of an alien admitted to the United States. The opinion is confused and opaque. It does refer in broad terms to the general grant of discretion to the Board (8 CFR 3.1(d)(1)) and if it can be read as finding a discretion in the Board in parole matters of excluded aliens, then the opinion in my view is plainly wrong and should not be followed.

I conclude that the Board had no authority to grant parole to Conceiro.

The issue comes down to whether this Court should set aside the denial, in the exercise of discretion, by the district director ("the director") of parole to Conceiro. Counsel for Conceiro says (Memorandum, p. 3) that the director "inexplicably departed from established policies and procedures" and was thus "arbitrary".

No reported decision has been found reviewing the exercise of discretion to deny parole. There is an unreported decision of Judge MacMahon (Diaz-Vasquez v. Marks, 73 Civ. 920) which, on virtually the same facts as here, denies habeas corpus.

There are decisions reviewing the exercise of discretion to deny suspension of deportation of an admitted alien. 8 U.S.C. § 1254. Judge Friendly has suggested that the scope of review is narrow when discretion of administrative officers in immigration matters is involved. Wong Wing Hang v. Immigration and Naturalization Service, 360 F. 2d 715, 719 (2d Cir. 1966). In the cited opinion, it was said that in such matters an abuse of discretion would be found only "if it were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group." (360 F.2d at 719). Within this standard, no abuse of discretion can be found here.

Conceiro has a Cuban passport. He left Cuba on January 27, 1972 and went to Madrid, Spain. In December 1972, he went to Barcelona and on December 14, 1972, flew from Barcelona to Rome. In Rome, he renewed a Spanish visa to reenter Spain. He then in Rome bought an airline ticket from Rome to Barcelona and with this and his passport and Spanish visa was able to enter the international area of the airport. Once there, an Italian friend or confederate gave him an airline ticket for Rome to New York and a boarding pass, which the friend or confederate had bought, using his own passport. Conceiro paid his friend or confederate for the Rome–New York ticket and by means of the boarding pass, was able fraudulently to board an Alitalia flight to New York where he arrived, as already noted, on December 17, 1972, without any entrance papers for the United States. Had the airline in Rome known the true facts, Conceiro would never had been allowed aboard. He was able to get aboard by the deception described. It should be noted, in extenuation, that Conceiro had received a message that his mother was dying in New York so that his incentive to come here is at least understandable.

Up to about the time of Conceiro's arrival, Cuban refugees had for a considerable period been paroled into the United States "unless a positive determination is made that he has been firmly resettled in a third country". The quoted language is from "operating instructions" of the Service.

When Conceiro and his companions landed on December 17, 1972, the office of the director realized that he (and apparently the others) had been able to reach a port of entry here by fraud at a foreign airport.

Someone in the director's office advised the Washington office of the Service. From Washington came instructions that Conceiro and his companions were to be detained and "immediately be scheduled for exclusion proceedings" (Marks affidavit, May 24, 1973, para 4).

On December 26, 1972, the Washington office sent a telegram to "all regions, all districts". Presumably this is bureaucratic double-talk for all district directors.

The December 26 telegram apparently reflects a decision said to have been made on December 14 "to deny parole to Cubans arriving from third countries who had stowed away on planes or vessels, had managed to board planes without passports and/or visas with boarding passes issued to other persons . . . ". (O'Connor affidavit, March 20, 1973, p. 2).

The December 26 telegram, as with much material originating with the Service, is far from clear. It may be interpreted, however, to reflect the December 14 decision. It refers to "wave of Cubans arriving in US from third countries", some of whom (like Conceiro) "managed to board planes . . . with boarding passes obtained by other persons". It instructs that Cubans like Conceiro "should be scheduled for exclusion hearings as soon as possible and deportation should be effected as soon as adverse decisions on admissibility and request for asylum are reached".

On the basis of this telegram and telephone conversations with Service officials in Washington, the director at New York understood that his instructions were "that Cuban aliens who had been granted haven in a third country, and who used false or fraudulent documents to get here, should not be permitted to remain so long as they were not being returned to conditions of persecution". (Marks affidavit, May 24, 1973, para. 5). The director accordingly denied parole to Conceiro.

While one is naturally sympathetic with the plight of Conceiro, the discretion is entrusted to the director and, within the standards for review cited above from Judge Friendly, I am unable to find any abuse of discretion by the director.

The petition for a writ of habeas corpus is dismissed.

So ordered.