William GILROY, William O'Neill, James Kelly, Edward Howell, and Michael Weir, Petitioners,

v.

Benedict FERRO, District Director, Immigration & Naturalization Service, Respondent.

No. CIV–82–142C.

United States District Court, W. D. New York.

Feb. 19, 1982.

Dillon & Cataldi, Buffalo, N. Y. (Kevin M. Dillon, Buffalo, N. Y., of counsel), for petitioner Gilroy.

Diebold, Bermingham, Gorman, Brown & Bridge, Buffalo, N. Y. (Mark J. Mahoney, Buffalo, N. Y., of counsel), for petitioner O'Neill.

John J. Molloy, West Seneca, N. Y., for petitioner Kelly.

Walsh, Cleary & Hamsher, Buffalo, N. Y. (Thomas P. Cleary, Buffalo, N. Y., of counsel), for petitioner Howell.

Murphy & Lobban, Buffalo, N. Y. (Robert M. Murphy, Buffalo, N. Y., of counsel), for petitioner Weir.

Roger P. Williams, U. S. Atty., Buffalo, N. Y. (Jack S. Penca, Asst. U. S. Atty., Buffalo, N. Y., of counsel), and Dept. of Immigration and Naturalization Service (James W. Grable, Buffalo, N. Y., of counsel), for respondent.

CURTIN, Chief Judge.

This case presents for decision the novel question of whether a district court may review a decision of the District Director of the Immigration and Naturalization Service to deny parole with an appropriate bond or other conditions to aliens detained for investigation pursuant to 8 U.S.C. § 1225.

Petitioners, four individuals who are not citizens of the United States,[1] sought entry into the United States on February 6, 1982, at the Rainbow Bridge, Niagara Falls, New York. They were refused admission by the Immigration and Naturalization Service [INS], of which the named respondent is the District Director. Upon the order of the respondent, petitioners were taken into custody pending exclusion proceedings.

Petitioners are Irish nationals. Messrs. O'Neill, Gilroy, and Kelly are residents of Canada, and Mr. Howell was staying in Canada under a lawful visa which expired during his detention here. Mr. O'Neill has permanent resident's status in Canada. He resides in St. Catherines, Ontario, with his wife and three children and has a steady job at Abel Waco, a Canadian firm. Mr. Kelly is a landed immigrant who has lived in Canada with his family for the past 12 years. He is employed as a sheet metal engineer by E. S. Fox, Inc. Mr. Gilroy is also a resident of St. Catherines, Ontario, and is employed there at Ontario Hydro. He was previously convicted of a crime in 1975 but has served his sentence and his parole term. Mr. Howell resides with his family in Ireland, where he is employed as the editor of a magazine. He is desirous of returning to them as soon as possible.

Criminal complaints were filed on February 9, 1982, against the individuals, charging them with attempting to enter into the United States by the use of false passports. Petitioners appeared before United States Magistrate Edmund F. Maxwell, and bail was set for each of them in the amount of a $10,000 signature bond.

On February 16, 1982, when the petitioners appeared before Magistrate Maxwell for a preliminary hearing, the government moved to dismiss the criminal charges. Because they were still being detained by the respondent, all the petitioners remained in custody after the charges were dismissed. Later that day, a federal grand jury returned indictments against the petitioners, again charging them with unlawful attempted entry and with an unlawful conspiracy to bring aliens into the country. At arraignment on the indictments on February 18, 1982, bail was set by Magistrate

---

1. The application was filed by five individuals. On February 18, 1982, Mr. Desmond Ellis, a/k/a Michael Weir, was served with a temporary exclusion order pursuant to 8 U.S.C. § 1225(c) and was no longer in the custody of the District Director at the time of this decision.

Maxwell for each in the amount of $10,000 cash or surety bond.

The INS has refused to set bail or to parole the men upon the filing of an appropriate bond.

In the usual case, aliens want to enter and remain in the United States. This is an exceptional case. These men do not want to stay here. They want to be released from custody and excluded from the country.

Gilroy, Kelly, and O'Neill are willing to waive their rights to an exclusionary hearing and will accept an order excluding them for a year under 8 U.S.C. § 1182(a)(20). As they are Canadian residents, they have an understandable interest in being able to travel into the United States at some future date and will contest a permanent exclusion order. But, while a hearing on the permanent exclusion is pending, they want to be paroled with an appropriate bond so that they can return to their homes and their families.

Mr. Howell does not want to return to this country at all. He has stated that he will agree to an order excluding him for life in return for his release.

The INS will not accept these concessions and will not exclude or parole the men. The government contends that these individuals present a danger to the public safety and should be excluded for life under 8 U.S.C. § 1182(a)(27), (28). The INS supports this contention with vague and conclusory allegations of "subversive activities." Until the government decides it has sufficient information to substantiate its charges, the petitioners, including Mr. Howell, are being held in custody. The INS will not exclude the men and will not set a bond for their temporary release.

The petitioners filed this application for a writ of habeas corpus, alleging that the decision of the District Director to hold them in custody without parole is arbitrary and capricious and is an abuse of his discretion. The application was brought on by an order to show cause on February 12, 1982, after petitioners had been held in custody for nearly one week. A brief hearing was held at that time. Because of the nature of the application, I scheduled a second hearing for Tuesday, February 16, at 2 p. m. During these proceedings, the positions of the parties were brought forward.

The parties concede that the United States Attorney General has the statutory authority to detain aliens pending exclusion hearing. 8 U.S.C. § 1225(b). The Attorney General does have the authority under the statute to parole aliens into the United States temporarily, 8 U.S.C. § 1182(d)(5), (6). The Attorney General has delegated this authority to the District Director of the INS in charge of a port of entry. 8 C.F.R. § 212.5(a).

■ The District Director's discretion in the exercise of his parole power is very broad. The position of petitioners, however, is that it is not unlimited and that, by his refusal to set any bond or other conditions of parole under the facts of this case, the District Director has gone beyond the boundaries of his discretion.

The position of the INS is clear. The respondent has consistently stated that this court is without jurisdiction to entertain the application. It is the INS' contention that the statute gives the Attorney General, and from him the District Director, absolute discretion and authority with regard to this issue. During the hearings, the attorney for the INS stated that, to the extent respondent has complied with the court's orders, he has done so as a courtesy to the court and to the parties and not from recognition of the authority of the court to entertain the application. The INS relies upon the cases of *In re Cahill,* 447 F.2d 1343 (2d Cir. 1971); *Shaughnessy v. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953); and *Knauff v. Shaughnessy,* 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1950), to support this position.[2]

2. The respondent has not filed a written response to the writ application. Although he was given an opportunity to submit his position in writing on Friday, February 12, counsel for the INS declined to do so, stating that he required "three business days" to prepare a re-

The initial question presented for consideration, then, is whether the court has jurisdiction to hear this case. After consideration of the statutes and the cases cited, the court concludes that it has jurisdiction under 28 U.S.C. § 2241, the federal habeas corpus provision. That statute provides that a writ of habeas corpus may issue when a petitioner is in custody under the authority of the United States in violation of the constitution, laws, or treaties of the United States, 28 U.S.C. § 2241(a), (c). The writ, traditionally known as the Great Writ, is a flexible judicial remedy which is used to "insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969).

Historically, any wrongful detention of liberty is antithetical to our system of justice and our notions of fairness. As the United States Supreme Court has stated, the function of the writ is, and always has been,

> to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements

of law, the individual is entitled to his immediate release.

*Fay v. Noia*, 372 U.S. 391, 401–02, 83 S.Ct. 822, 828–829, 9 L.Ed.2d 837 (1963).

In the case at bar, there is no question that petitioners are being held in federal custody. They are claiming that this custody is unlawful, and they seek relief. It appears to the court that this is precisely the situation for which the writ is designed. While the precise standard of review to be applied to the respondent's decision is far from settled, as will be discussed below, it is clear that the discretion is broad. It is not, however, unfettered, and the court finds that it has jurisdiction under the statute to review the decision.

Nor is an opposite conclusion mandated by *In re Cahill, supra,* and the other cases cited by respondent. Judicial review was available to the petitioner in *Cahill.* The district court's assertion of jurisdiction was not disapproved by the court but was impliedly affirmed. The same is true in each of the cases cited by respondent. In each case the alien was allowed to challenge the legality of his detention through this time-honored procedure. These individuals must be afforded the same opportunity.

Having established that the court has jurisdiction to entertain the application, we

---

sponse and thus could not meet the court's deadline of Tuesday, February 16. On Tuesday, February 16, the court again renewed its offer of an opportunity to submit a response, making the response returnable on Wednesday morning. Counsel again declined, stating as his grounds the court's lack of jurisdiction and demanded once again three days in which to prepare a memorandum or affidavit.

The only material the court has received from the INS is a copy of the Detention Policy Guidelines in Exclusion Codes, promulgated in December, 1981, and a copy of the charges lodged against the petitioners by the INS, both of which were specifically requested by the court. An examination of the guidelines shows that the INS has a strict policy of detention of aliens who do not appear to be entitled to land, and that the District Directors exercise their discretionary parole powers under section 1182(d)(5) carefully and narrowly.

It is questionable, however, whether these guidelines are applicable to the petitioners. The guidelines state:

> The purpose of this interpretative memorandum is to set forth guidelines which may be used in deciding whether to detain or parole arriving aliens who are not clearly and beyond a doubt entitled to land. These guidelines are in conformity with the applicable statute, legislative history, and regulations.
>
> \* \* \* \* \* \*
>
> Assuming that the arriving alien covered by section 235(b) does not wish to withdraw his application and depart, the only exception to detention is through an exercise of the parole authority set forth in section 212(d)(5) of the Act.

These petitioners, however, fall within the exception rather than the rule. As previously noted, they *do* wish to withdraw their applications for entry and wish to depart as soon as possible. Only the actions of the respondent prevents them from doing so.

now proceed to determine the appropriate standard of review.

■ Respondent contends that review must be limited to determination of whether the District Director has exercised his authority. Respondent relies primarily upon *In re Cahill, supra*, as the "last word from the Second Circuit," upon the older Supreme Court cases of *Knauff v. Shaughnessy, supra*, and *Shaughnessy v. Mezei, supra*, and upon a case from the Fifth Circuit, *Ahrens v. Rojas*, 292 F.2d 406 (5th Cir. 1961). Petitioners argue that the court should apply the "abuse of discretion" standard which is generally applicable to review of administrative actions.

The court agrees with the petitioners. The majority of courts have applied the "abuse of discretion" standard. *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir. 1981); *Ahrens v. Rojas, supra* at 411; *see also Conceiro v. Marks*, 360 F.Supp. 454 (S.D.N.Y.1973); *and see* the comprehensive opinion of the Honorable Marvin H. Shoob, Northern District of Georgia, in the case of *Soroa-Gonzales v. Civiletti*, 515 F.Supp. 1049, 1056 (N.D.Ga.1981). This view is in accordance with the leading treatises on immigration law and procedure. *See* Gordon and Rosenfield, *Immigration Law and Procedure*, § 2.54, in which it is stated:

[t]he award or refusal of parole, the conditions fixed, and the termination of parole obviously involve the exercise of discretion. This discretionary authority is

broad, but not unlimited. It may be subjected to judicial scrutiny on a charge that discretion was arbitrarily exercised or withheld.

The standard of review used by the *Cahill* court is more stringent than that which is generally applied, but the court finds that *Cahill* is distinguishable from this case. The *Cahill* court was careful to limit its holding to the facts of that case. The court did not preclude review of the decision of the INS at a future date, stating only that "[a]t this posture of the proceedings . . . we believe we are without authority to grant parole or bail." *Id.* at 1344. Moreover, Cahill had been offered an opportunity for a hearing as early as one day after his arrival but requested an adjournment. These petitioners, on the contrary, have been held in custody for 13 days, and while the respondent has stated that the INS will attempt to schedule a hearing as soon as possible, no date has been firmly established.[3] Further, the record in the instant case is more fully developed than was the record in *Cahill*. The petitioner in *Cahill* argued that he was not an "alien denied entry." The court was unable, on the basis of the record before it, to determine the merits of his contention. Here, petitioners *admit* they are excludable aliens and desire to withdraw their applications and leave.

Because we find the case is distinguishable, we will apply the standard commonly

---

**3.** Indeed, the position of the INS regarding the exclusionary hearing has been unstable and troublesome.

At the hearing held on February 16, 1982, the INS stated that it would be prepared to proceed with the hearing by the afternoon of February 18 or by February 19. This was reaffirmed by counsel for the INS during an in-chambers conference on February 17. By the next afternoon, the INS had performed a complete about-face and stated only that it would proceed to a hearing when it was prepared to do so. The explanation given for the postponement of the hearings was that the INS had received classified information which rendered its ability to proceed uncertain.

During an *in camera* meeting, the Assistant United States Attorney representing the respondent made clear the limits of his authority with regard to disclosure of the classified mate-

rial. He informed the court that he was authorized by the INS to show the material to the court or to verbally apprise the court of its contents. He was not authorized to have the material made a part of the record and sealed or to have a record made of his verbal statements pertaining to the information.

Because this would effectively bar appellate review of this decision, and could be prejudicial to the petitioners, the court was unwilling to accept the information under these terms. Consequently, the court has not been apprised of the contents of the classified material. The court respects the position taken by the Assistant United States Attorney, and we appreciate his candor in approaching the issue. The result, however, is that the respondent has yet to come forward with any grounds for the continued detention of the petitioners or his refusal to parole them.

used, the abuse of discretion standard. This is a very strict standard, and the petitioners have a heavy burden to bear.

> [The petitioner] generally alleges that there has been an abuse of discretion or that discretion was exercised arbitrarily and capriciously. But the burden is upon him to prove that charge, and he can satisfy this burden only by showing that the order was without reasonable foundation. If the record shows that discretion actually has been exercised, the courts will be reluctant to substitute their discretion for that of the Attorney General.

*Immigration Law and Procedure*, § 8.15c.

We agree with this general rule and agree that the burden is on the petitioners to show that the District Director's actions were without any rational basis, so that they amounted to a failure to exercise discretion.

 Under the facts of this case, it appears that the petitioners have satisfied this burden. Petitioners are being detained pending an investigation into the circumstances of their attempted entry. The respondent has charged each of them with attempted unlawful entry in violation of 8 U.S.C. § 1182(a)(19), (20), (27), and (28). As noted above, the petitioners have made substantial concessions to the District Director. They have agreed to be expelled, have asked to be excluded. Mr. Howell agrees to be permanently excluded. The remaining petitioners are anxious to contest a determination of permanent exclusion. They have stated that they will appear at the hearing, whenever it is scheduled, in order to oppose such a determination. It is clear that the petitioners will bear all of the risk of the result of their failure to appear for the hearing. The most severe sanction which can be imposed by the INS against these individuals is permanent exclusion. The petitioners are aware of this and know what the consequences will be if parole is granted and they do not appear. They have stated their willingness, their desire to appear for a hearing. O'Neill, Gilroy, and Kelly reside in Canada and have a strong interest in being able to travel between Canada and

the United States. They are unlikely to refuse to return for an exclusion hearing.

In view of these substantial concessions, the refusal of the District Director even to consider parole for these individuals is arbitrary indeed. The history of these proceedings shows an abuse of discretion and raises suspicion that the actions taken were done to harass the petitioners.

At the hearing on February 18, the attorney for the District Director stated unequivocally that he would not grant parole under any conditions. In view of this position, the court finds it would be futile to order the District Director to set bail. Instead, the District Director is ordered to deliver the petitioners to the court on Monday, February 22, at 2 p. m., at which time the court will set an appropriate bond.

So ordered.