**Desmond ELLIS, Petitioner,**

v.

**Benedict FERRO, District Director, U.S. Immigration & Naturalization Service and Joseph St. George, Marshal, United States Marshal Service, Respondents.**

No. CIV–82–590.

United States District Court, W.D. New York.

Oct. 27, 1982.

Carol C. White, Buffalo, N.Y., for petitioner.

Salvatore R. Martoche, U.S. Atty., Jack S. Penca, Asst. U.S. Atty., Buffalo, N.Y., for respondents.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Petitioner, a native and citizen of Ireland, was refused admission into the United States from Canada February 6, 1982 in Niagara Falls, N.Y. by the Immigration and Naturalization Service ("the INS"). Respondent Ferro ordered petitioner taken into custody at that time, pending exclusion proceedings. On February 18, 1982 Ferro informed petitioner by letter (Exhibit A to the Complaint) that Ellis had been "temporarily excluded from admission to the United States under section 235(c) of the Immigration and Nationality Act" (8 U.S.C. § 1225(c)), and that his application for admission into the United States was to be referred to the INS Regional Commissioner together with any written statement or information petitioner desired to submit. Petitioner was also informed that, should he enter the United States while the temporary exclusion order was in effect, he would subject himself to arrest and deportation and possible criminal prosecution.

On February 16, 1982 petitioner was indicted for conspiring to bring aliens into the United States illegally, for using a false passport and for making false statements to a federal agency. Petitioner was arraigned February 18th and bail was set in the amount of $25,000 cash or surety. Petitioner currently is in custody pending disposition of the Indictment.

On February 25, 1982 petitioner submitted to the INS Regional Commissioner his affidavit stating information pertinent to his temporary exclusion and requested a stay of the exclusionary proceedings pending consideration of petitioner's application of that date for asylum. Petitioner also requested disclosure of the information upon which the temporary exclusion order was based, and a hearing on the question of his exclusion should his asylum application be denied. (Complaint Exhibit B.)

On June 17, 1982 Ferro advised petitioner of his intention to deny the asylum request and granted petitioner additional time in which to submit rebuttal evidence. Petitioner thereafter submitted certain evidence and requested information and additional rebuttal time from respondent.

On June 15, 1982 petitioner's attorney had written Ferro requesting a hearing to determine the country to which petitioner would be deported pursuant to 8 U.S.C. § 1227,[1] and further that the INS "make a bond determination which will allow [petitioner's] release in the event he posts his criminal bail, pending the determination of the country of deportation and his asylum application * * *." (Complaint Exhibit D.) Ferro replied June 23rd noting that petitioner is not entitled to a hearing "since he is under a temporary exclusion order at this time" and that the temporary order "is being referred to the Regional Commissioner for determination as to whether the order should become a permanent exclusion order, pursuant to Title 8 CFR 235.8." Under 8 C.F.R. § 235.8(b) the Regional Commissioner has discretion to direct either further examination of an alien or that he be accorded a hearing. Respondent also informed counsel:

1. Which provides in pertinent part:

"(a)(1) Any alien * * * arriving in the United States who is excluded under this chapter, shall be immediately deported * * *. Deportation shall be to the country in which the alien boarded the vessel or aircraft on which he arrived in the United States, unless the alien boarded such vessel or aircraft in foreign territory contiguous to the United

States or in any island adjacent thereto or adjacent to the United States and the alien is not a native, citizen, subject, or national of, or does not have a residence in, such foreign contiguous territory or adjacent island, in which case deportation shall instead be to the country in which is located the port at which the alien embarked for such foreign contiguous territory or adjacent island."

"At such time as your client comes into the custody of the Immigration and Naturalization Service, it is our intention to execute the aforesaid temporary exclusion order. In light of this proposed action, the Service will not consent to the release of your client from Service custody in the United States under a bond as requested in your letter." Complaint Exhibit C.

On July 7, 1982 petitioner instituted this action by filing a Complaint together with a Petition for the Writ of Habeas Corpus.[2] The Complaint alleges that pursuant to 8 U.S.C. § 1227, set forth in pertinent part in footnote 1 above, should petitioner ultimately be excluded the deportation should be to France, the country from which petitioner departed for Canada. In the language of section 1227 Canada is "foreign territory contiguous to the United States" and thus not proper for petitioner's deportation in that he is not a "native, citizen, subject, or national of, [and] does not have a residence in" Canada. Petitioner alleges that in executing the temporary exclusion order Ferro is expected to deport petitioner to Canada rather than to France and that he would then be deported by the Canadian government to Ireland.

Petitioner bases these expectations in part upon a recently proposed INS regulation which assertedly is contrary to the plain language of 8 U.S.C. § 1227(a)(1) and therefore unlawful, in that it defines "residence in a foreign contiguous territory" for purposes of section 1227 as "includ[ing] any physical presence, regardless of intent, in a foreign contiguous territory * * * if the government of such territory * * * agrees to accept the alien" (47 Fed.Reg. 12132 (March 22, 1982)) (to be codified at 8 C.F.R. § 237.6(a)(3)).[3] Petitioner also alleges that his co-defendants named in the Indictment were ordered temporarily excluded and deported to Canada by Ferro and that Canada subsequently deported one co-defendant to Ireland. Petitioner alleges that if deported to Ireland he will be subjected to political persecution, as he was before departing Ireland, and probably incarcerated and subjected to an unfair trial upon unspecified unfounded and politically motivated criminal charges now pending against him.

In his Complaint petitioner seeks an order granting him a hearing before an Immigration Judge to determine the country to which he would be deported, should he be deported, and the opportunity to seek appellate review of such determination. Petitioner also requests a hearing before an Immigration Judge and appellate review regarding his request for asylum should Ferro deny such request. Also sought is an order enjoining Ferro from deporting petitioner pending a final determination of his excludability, asylum application and the merits of this lawsuit. Finally, petitioner requests that Ferro be directed to set bond for petitioner to allow his release on bail on the pending criminal charges without his immediate deportation to Canada.

In his Petition for a Writ of Habeas Corpus petitioner seeks that he be brought

---

2. Petitioner's Petition for the Writ of Habeas Corpus in the instant proceeding was not filed with the within Complaint but was merely stamped with the same docket number assigned to the Complaint. I have directed that the Petition be docketed as filed in civil action No. 82–590 on the same date as the within Complaint, July 7, 1982.

Petitioner, with four other individuals who had sought entry with him, had earlier sought the writ of habeas corpus from this court, challenging Ferro's refusal to accept their waiver of an exclusionary hearing and grant their request to be deported subject to a one-year bar to re-entry (and in the case of Edward Howell, a lifetime bar). That action was discontinued as to petitioner on the grounds that he had become the subject of a temporary exclusion order and was no longer in Ferro's custody. Gilroy v. Ferro, 534 F.Supp. 321, 322 n. 1 (W.D.N. Y.1982).

3. The acceptability vel non of this proposed regulation will be considered as if the regulation were finally adopted. There is no corresponding provision in current INS regulations. Ferro has not denied an intention to deport petitioner to Canada and petitioner has made a convincing showing that such would be his fate were he to post bail on his criminal charges. Given the language of 8 U.S.C. § 1227(a), Ferro could support petitioner's deportation to Canada only by the device of the proposed regulation or by its practical equivalent.

before this court in order to permit inquiry into the cause of his detention. It is also requested that petitioner be ordered discharged from detention and restraint in the event criminal bail is posted and that Ferro be directed to stay exclusion and deportation proceedings against petitioner pending exhaustion of his administrative remedies and judicial review regarding his exclusion, including determination of country and of his asylum application.

Petitioner submitted with his Petition a request for an Order to Show Cause why a writ of habeas corpus should not issue. Upon informal inquiry by the court Ferro agreed to show cause why the writ should not issue without need for an Order and on July 14th oral argument was heard on the merits of the Petition. At that time it was disclosed that Ferro had denied petitioner's asylum application July 7, 1982. On oral argument the parties agreed to an extension of time for the submission of this matter for consideration, to permit both sides to brief issues raised orally by the attorney for Ferro.

On about August 5th the INS Regional Commissioner denied the asylum request and petitioner's request for a hearing and issued a final order of exclusion (see 8 C.F.R. § 235.8(b)) accompanied by a brief memorandum.[4] Ferro notified petitioner of this final decision by letter dated September 2nd. These developments rendered moot Ferro's contention in opposition to the petition for the writ of habeas corpus that by operation of 8 U.S.C. § 1105a(b)[5] such petition could not be entertained until the exclusion order was made final.

Issues bearing directly upon the legality of petitioner's custody may be determined on his petition. *See, e.g., Sotelo Mondragon v. Ilchert,* 653 F.2d 1254 (9th Cir. 1980); *Pierre v. United States,* 525 F.2d 933, 936 (5th Cir. 1976). In the present posture of this case these issues include the threat of immediate deportation to Canada should petitioner post bail on the criminal charges, and the denial of petitioner's asylum application (*see, e.g., Stevic v. Sava,* 678 F.2d 401, 404 n. 6 (2d Cir. 1982); *Sotelo Mondragon v. Ilchert, supra; Stanisic v. United States Immigration and Nat. Service,* 393 F.2d 539, 542 (9th Cir.1968)). The denial of parole pending final determinations of the receiving country and the asylum matters, and Ferro's refusal to stay petitioner's deportation pending the determination of these two matters are also reviewable as denials of discretionary relief not made in the course of deportation proceedings. *E.g., Bertrand v. Sava,* 684 F.2d 204, 210 (2d Cir. 1982).

---

4. The full text of the memorandum is as follows:

"The applicant, a 29 year old native and citizen of Ireland, last applied for admission to the United States at Niagara Falls, New York on February 6, 1982 as a temporary visitor for pleasure. He was not found to be clearly admissible to the United States, given the opportunity to make a statement in his own behalf but declined to do so and was subsequently temporarily excluded pursuant to section 235(c) of the Immigration and Nationality Act on February 18, 1982.

"A request for political asylum was submitted by the applicant. He was interviewed by Service officers on March 12, 1982 and refused to answer many pertinent questions on the grounds that the responses could be incriminatory. The request was ultimately denied for failure to establish a well founded fear of persecution should the applicant return to Ireland.

"After consideration of all the information contained in the record, it is concluded that the applicant is inadmissible under section 212(a)(27) of the Immigration and Nationality Act. This inadmissibility is based on classified information, the disclosure of which would be prejudicial to the public interest, safety and security of the United States. Accordingly, the applicant will be excluded without hearing by an Immigration Judge as provided in 8 CFR 235.8(b).

"IT IS ORDERED pursuant to the authority contained in section 235(c) of the Act and 8 CFR 235.8 that the applicant be excluded and deported without further hearing by an Immigration Judge."

5. "Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 1226 of this title or comparable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings and not otherwise."

At present it is possible to dispose of petitioner's challenge to Ferro's intention to deport him to Canada. As this aspect of the habeas application involves only issues of law, there is no need for an evidentiary hearing upon it. 28 U.S.C. § 2243. Inasmuch as I conclude that Ferro will act entirely correctly should he deport petitioner into Canada in the event that petitioner is ultimately excluded from the United States—*i.e.,* after judicial review of his asylum denial—petitioner's interest in and request for a further administrative or judicial hearing regarding the country to which he is to be deported and a stay and parole pending the determination thereof is mooted by this decision.

■ Crucial to his challenge to the threat of immediate deportation to Canada is petitioner's contention that the regulation interpreting the amended 8 U.S.C. § 1227(a) is contrary to the express language of that statute and therefore illegal. An agency's interpretation of the words of a statute the administration of which is entrusted to it is entitled to considerable deference, but "this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose and history." *Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979).

■ In the instant case the language of the statute involved indeed appears to point to a meaning other than that ascribed to it by the INS; no warrant appears on the face of section 1227(a) for interpreting "residence" in a foreign contiguous territory as including "any physical presence, regardless of intent, in a foreign contiguous territory or adjacent island if the government of such territory or island agrees to accept the alien," as does the proposed regulation. Nonetheless, viewed in the context of the whole of section 1227 and the purpose of the 1981 amendment thereof as revealed by legislative history, this regulatory gloss cannot be held invalid under current concepts of administrative law.

Prior to December 1981, 8 U.S.C. § 1227 provided that an excluded alien was to be deported "to the country from whence he came," which in this circuit had been construed to mean the " 'country in which the alien has a place of abode and which he leaves with the intention of ultimately coming to this country.' [*United States v. Holland-American Line,* 231 F.2d 373, 376 (2d Cir. 1956)]." *Menon v. Esperdy,* 413 F.2d 644, 652 (2d Cir.1969). In December 1981 Congress and the Executive enacted into law the Immigration and Nationality Amendments Act of 1981, the overall purpose of which was "to improve the efficiency of the [INS]" by improvement of various provisions of the Act. The purpose of the amendment of section 1227(a) is consistently described in the Act's legislative history as intended to give the Attorney General greater flexibility and to facilitate deportation of excluded aliens, by permitting the deportation of an excluded alien to a country other than "the country from whence he came," as had long been permissible in the deportation of expelled aliens under 8 U.S.C. § 1253(a). *See* H.R.Rep. No. 264, 97th Cong., 1st Sess. 24, reprinted in [1981] U.S.Code Cong. & Ad.News 2577, 2593; H.R.Rep. No. 1301, 96th Cong., 2d Sess. 30; S.Rep. No. 859, 96th Cong., 2d Sess. 14; 127 Cong.Rec. S10503, 10504 (daily ed., Sept. 25, 1981) (text of Senate Report accompanying S1663, 96th Cong., 2d Sess.). The language of the amendment to section 1227(a) does not indicate any special congressional concern absolutely to avoid returning an excluded alien to a foreign contiguous territory unless he is a native, citizen, subject, national or resident of such territory. On the contrary, section 1227(a)(2) provides that, when the country designated pursuant to subparagraph (a)(1) refuses to accept the alien, deportation may ultimately be directed to "any country which is willing to accept the alien into its territory."

The United States Department of Justice, parent agency of the INS and sponsor of the legislative amendment in question, has explained the relationship of the proposed regulatory "residence" definition to the amendment's legislative history in a manner consistent with the foregoing review:

"In instances where the excludable alien does not meet the citizenship, native, citizen [sic], subject or national definition, but where a reciprocal agreement exists between the United States and a foreign government to accept excluded aliens, the rule defines 'residence in a foreign contiguous territory or adjacent island' as being satisfied by any physical presence in contiguous territory where the foreign government agrees to take the alien back. For example, there presently exists the 'Reciprocal Arrangement of 1949' between Canada and the United States. Under this arrangement, excludable aliens may be returned to either Canada or the United States with the consent of the receiving country. It is clear from the House Report to the 1981 amendments (H.R. 97–264, October 2, 1981, at page 24) that such existing arrangements remain unaffected by the revision to section 237 of the Act [ (8 U.S.C. § 1227) ]. It is also clear that the amendments were intended to facilitate the deportation of excludable aliens. Defining residence to allow return authorized under a reciprocal agreement is consistent with this interpretation." 47 Fed.Reg. 12129, 12130 (1982).

Further, it would seem that in numerous cases "residence" as that concept is traditionally understood might be established by conduct in a foreign contiguous territory not much more substantial than merely passing through such territory. " 'When an old domicile is definitely abandoned, and a new one selected and entered upon, length of time is not important. One day will be sufficient, provided the *animus* exists.' " *United States v. Chong Sam,* 47 F. 878, 885 (E.D.Mich.1891). The challenged INS regulation quite rationally declines to hinge deportability to contiguous territory upon an alien's previously formed intention to reside therein—which may be as susceptible to change as it is resistive to proof—where the government of such territory agrees to accept the alien.

I thus conclude that the regulation by which petitioner is threatened with deportation to Canada is supported by legislative history, congressional purpose and by reason, and is therefore fully entitled to the deference accorded such regulations by the judiciary.

Considered apart from petitioner's asylum application, it thus appears that no illegality taints either Ferro's expressed intention to immediately deport petitioner, presumedly to Canada, should he post bond on his criminal charges, or Ferro's refusal to stay deportation or grant parole pending further proceedings to determine the country to which petitioner should be deported.

■ The United States Court of Appeals for the Second Circuit has, however, recently made it clear that non-frivolous asylum claims must be accorded "a plenary hearing under the legal standards established by the [United Nations Protocol Relating to the Status of Refugees, 19 UST 6257, 606 UNTS 268]," in order "to assure observance of correct legal standards" under the Attorney General's authority to grant asylum (8 U.S.C. § 1253(h)), held to have been made non-discretionary by the recent amendments to the Immigration and Nationality Act effected by the Refugee Act of 1980, Pub.L. No. 96–212, 94 Stat. 102. *Stevic v. Sava, supra,* 678 F.2d at 410. *See also,* 28 U.S.C. § 2243. Although this court has not been furnished a copy of petitioner's asylum application, the allegations of the Complaint and of the Petition, and of the copy of petitioner's affidavit attached to the Complaint, indicate that his asylum application is based on a fear of persecution because of his political opinion, which if "well-founded" within the meaning of 8 U.S.C. § 1253(h)(1) requires that he be accorded asylum, absent one of the factors stated in section 1253(h)(2). Thus such claim is apparently not frivolous.

The *Stevic* court indicated that development of the proper legal standards for consideration of asylum claims is to be "informed by the traditional indices of legislative intent, by the [United Nations High Commissioner for Refugees' *Handbook on Procedures and Criteria for Determining Refugee Status* (Geneva, 1979) ], and by

experience." 678 F.2d at 410. Accordingly an evidentiary hearing must be had to assess the basis for the INS Regional Commissioner's conclusions that petitioner had "fail[ed] to establish a well-founded fear of persecution" should he return or be returned to Ireland.

The protection of the section 1253(h)(1) asylum provision does "not apply to any alien if the Attorney General determines that * * * there are reasonable grounds for regarding the alien as a danger to the security of the United States." 8 U.S.C. § 1253(h)(2)(D). The final exclusion order held petitioner to be "inadmissible under section 212(a)(27) of the Immigration and Nationality Act," 8 U.S.C. § 1182(a)(27). This section provides for the exclusion of

"[a]liens who the * * * Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the public welfare, safety or security of the United States." [6]

Thus a threshold question to be resolved with the aid of the evidentiary hearing is whether the Regional Commissioner found petitioner excludable under 8 U.S.C. § 1182(a)(27) because petitioner was deemed "a danger to the security of the United States," which would deprive him of asylum eligibility and, if so, whether such determination was an abuse of discretion (cf., Bertrand v. Sava, supra, 684 F.2d at 210). Ferro will also be permitted to demonstrate that the Regional Director's finding of inadmissibility under section 1182(a)(27) was owing to some other consideration that, if valid, renders petitioner ineligible for asylum under section 1253(h)(2).

The hearing will also serve to enable petitioner to test Ferro's reasons for denying him parole pending judicial review of his asylum application, such denial also being subject to review for abuse of discretion. Bertrand v. Sava, supra.

The burden of proof rests at all times on petitioner for review of both the determination of inadmissibility under 8 U.S.C. § 1182(a)(27) and the denial of parole, and such burden is a heavy one: petitioner must show that Ferro either failed to exercise his discretion or exercised such irrationally or in bad faith. Bertrand v. Sava, supra, at 213.

Apparently, the standard applicable to review of the asylum denial, considered by itself, is that "a reviewing court has a clear responsibility to assure that the non-discretionary exercise of [asylum] authority has been performed according to the correct standards of law." Stevic v. Sava, supra, 678 F.2d at 410. In this case this responsibility may well require a stricter than usual review of the determination of inadmissibility under 8 U.S.C. § 1182(a)(27), if such is proffered as support for asylum denial.

In accordance with the foregoing, respondents are hereby ORDERED to appear before this court at Part II thereof on November 22, 1982 at 9:00 in the forenoon thereof, and there to produce the body of petitioner. Ferro is directed to produce the administrative record upon which his denial of petitioner's asylum and parole applications and his determination of petitioner's inadmissibility under 8 U.S.C. § 1182(a)(27) are based, and to be prepared to testify as to the divulgable considerations upon which the determinations at issue are based.

In order to assist the court the parties are directed to submit memoranda of law regarding the standards relevant under Stevic v. Sava, supra, to review of Ferro's denial of petitioner's asylum application, as well as the other determinations to be made. In particular, Ferro is directed to furnish the court with a copy of the above-mentioned High-Commissioner's Handbook, which our court of appeals has declared probative of the legal standards applicable to asylum applications.

---

**6.** I note that apart from his asylum claim petitioner concedes that he is deportable pursuant to 8 U.S.C. § 1182(a)(19) or (20) due to the illicit manner of his attempted entry. Ellis Affidavit, ¶ 6.

Finally, petitioner's request for preliminary relief enjoining his deportation *pendente lite* is hereby ORDERED denied on the grounds that petitioner is not apparently threatened with deportation while he remains incarcerated on his pending criminal charges. Were petitioner to post bail under the protection of such preliminary relief and prior to a determination that Ferro must set bond for him, he would merely enter administrative custody. This denial is without prejudice to a renewed request for similar relief if deemed appropriate.